UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X          FILED UNDER SEAL

UNITED STATES OF AMERICA               AFFIDAVIT IN SUPPORT OF
                                       ARREST WARRANTS
     - against -
                                       (T. 18 U.S.C. § 371)
JOHN VITO CONZA and
RICKY KESSLER,                         05  1333 M

                    Defendants.

- - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

     JASON BRENNEMAN, being duly sworn, deposes and says

that he is a Special Agent with the United States Secret Service

("Secret Service"), duly appointed according to law and acting as

such.

     Upon information and belief, on or about and between

April 18, 2005 and October 17, 2005, within the Eastern District

of New York and elsewhere, the defendants JOHN VITO CONZA and

RICKY KESSLER, together with others, did conspire to buy, sell,

exchange, transfer, receive or deliver any false, forged,

counterfeited, or altered obligation or other security of the

United States, with the intent that the same be passed,

published, or used as true and genuine, in violation of Title 18,

United States Code, Section 473.

     (Title 18, United States Code, Section 371)

     The source of your deponent's information and the

grounds for his belief are as follows:[1]

---

[1] Because the purpose of this affidavit is to set forth only
those facts necessary to establish probable cause, I have not set
forth all of the facts and circumstances of which I am aware.

1.    I have been a Special Agent with the Secret Service for approximately four years.  During that time, I have investigated the production and sale of counterfeit United States currency, and have been trained in the detection and manufacture of counterfeit currency.  My training and experience enables me to tell counterfeit currency apart from genuine currency.

2.    On June 8, 2005, a confidential informant ("CI")[2] met with Special Agents from the Secret Service, including your affiant, and delivered five counterfeit $20 United States Federal Reserve Notes that he stated he obtained from defendant JOHN VITO CONZA in Queens, New York.

3.    On July 13, 2005, CI placed a consensually monitored telephone call to JOHN VITO CONZA from the New York Field Office of the Secret Service.  During this conversation, CI and defendant JOHN VITO CONZA agreed to meet later on the same date, at CI's mother-in-law's residence in Richmond Hill, New York, to discuss the purchase of counterfeit United States currency.

4.    CI was outfitted with a digital recorder and a transmitter, and met with defendant JOHN VITO CONZA at the Richmond Hill residence later in the afternoon of July 13, 2005. During the meeting, defendant JOHN VITO CONZA discussed the purchase of counterfeit United States currency with the CI, and

---

[2]Earlier this year, CI was arrested by local authorities in Pennsylvania on counterfeit currency related charges.  The CI is cooperating with the government in this investigation with the hope of receiving a lesser sentence in Pennsylvania.

stated that he would give CI a bag of counterfeit United States currency in exchange for $500 genuine United States currency when the defendant JOHN VITO CONZA's supplier returned home from work later that evening.

5.    CI placed a telephone call to defendant JOHN VITO CONZA later in the evening of July 13, 2005, in the presence of Special Agents of the Secret Service, including your affiant. During this conversation, defendant JOHN VITO CONZA advised the CI that CI could not pick up the "stuff" on that date, but could pick it up on July 15, 2005.

6.    On July 15, 2005, CI made a consensually recorded telephone call to defendant JOHN VITO CONZA, during which defendant JOHN VITO CONZA advised CI that an individual named "Ricky," later identified as the defendant RICKY KESSLER,[3] had the "stuff." Defendant JOHN VITO CONZA directed CI to call defendant RICKY KESSLER to make arrangements for delivery. Also during this telephone call, defendant JOHN VITO CONZA confirmed with CI that CI had $500 in genuine United States currency for the transaction.

7.    CI placed a consensually recorded telephone call later on July 15, 2005 to defendant RICKY KESSLER, who advised CI

---

[3] On August 9, 2005, agents from the Secret Service conducted surveillance of "Ricky," who was stopped by the New York Police Department ("NYPD") for a minor traffic violation. After the NYPD officer released "Ricky," the Secret Service agents spoke with the officer, and determined that the driver of the vehicle was defendant RICKY KESSLER.

4

that he had the "stuff" from defendant JOHN VITO CONZA, and would
meet CI for delivery.

8.   Defendant RICKY KESSLER told CI to meet him on
July 15, 2005 on 79th Street in Queens, between 155 Avenue and
156 Avenue.  CI proceeded to that location and met with defendant
RICKY KESSLER, who was driving a silver Nissan X-Terra.  Special
Agents from the Secret Service, including your affiant, observed
CI handing defendant RICKY KESSLER $350 in genuine United States
currency.  Defendant RICKY KESSLER was subsequently observed
retrieving a white plastic bag from the silver Nissan and giving
it to CI.

9.   Special Agents from the Secret Service, including
your affiant, followed CI to the corner of 95th Street and 109th
Avenue in Richmond Hill, New York, at which time CI turned over
the white plastic bag given to him by Defendant RICKY KESSLER.
At this time, it was determined that the white plastic bag
contained a large quantity of counterfeit United States currency.

10.   On the same date, July 15, 2005, CI placed a
consensually recorded telephone call to defendant JOHN VITO CONZA
and advised that CI had given the "stuff" to a "friend" of CI's,
and that the "friend" may be interested in purchasing more
counterfeit currency.

11.   Special Agents from the Secret Service, including
your affiant, returned to the New York Field Office on July 15,
2005 with the counterfeit United States currency purchased by CI.
Your affiant counted the counterfeit currency, and determined

that the white plastic bag contained $17,000 in counterfeit
United States currency.

   12. On August 3, 2005, CI placed a consensually
recorded Nextel Direct Connect conversation between CI and
defendant JOHN VITO CONZA.  During the conversation, defendant
JOHN VITO CONZA agreed to meet with CI's "friend."

   13. On August 4, 2005, CI introduced an undercover
Special Agent to defendant RICKY KESSLER at the corner of 84th
Street and 157 Avenue in Queens.  During this meeting, the
undercover agent agreed with defendant RICKY KESSLER to purchase
$214,000 in counterfeit United States currency from defendant
RICKY KESSLER.

   14. On August 30, 2005, the undercover agent met with
CI and defendants JOHN VITO CONZA and RICKY KESSLER at the
Waterview Diner, 163-30 Crossbay Boulevard, Queens, New York.
During this meeting, defendants JOHN VITO CONZA and RICKY KESSLER
advised the undercover agent that they print the counterfeit
currency at a printing shop.  Defendants JOHN VITO CONZA and
RICKY KESSLER further stated that they pay the owner of the shop,
"Gloria", for allowing the defendants JOHN VITO CONZA and RICKY
KESSLER to print the counterfeit United States currency after
hours.  Defendants JOHN VITO CONZA and RICKY KESSLER stated that
"Gloria" is able to order paper that looks and feels like genuine
United States Currency for approximately $1400.  According to
defendants JOHN VITO CONZA and RICKY KESSLER, they are able to

6

print approximately $1,000,000 in counterfeit currency in about
two hours.

15.   During the meeting on August 30, 2005, the
undercover agent informed defendants JOHN VITO CONZA and RICKY
KESSLER that he was interested in purchasing additional
counterfeit currency from them, and would contract them regarding
a future purchase at a later date.

16.   On September 27, 2005, the undercover agent
placed a telephone call to defendant RICKY KESSLER, and arranged
a meeting for September 29, 2005 to discuss the purchase of
additional counterfeit currency.

17.   On September 29, 2005, the undercover agent met
with defendant RICKY KESSLER at a Starbucks in Jamaica, New York.
During this meeting, defendant RICKY KESSLER advised the agent
that he would introduce the agent to "Gloria" the following week,
and the agent could give "Gloria" $1400 to purchase the paper
used to print counterfeit currency.  Defendant RICKY KESSLER
further explained to the undercover agent that the defendants
JOHN VITO CONZA and RICKY KESSLER were present when the
counterfeit currency was printed, but that the actual printing
was conducted by employees of "Gloria".

18.   On October 11, 2005, the undercover agent met
with defendant RICKY KESSLER, and defendant RICKY KESSLER advised
the agent that he would bring the agent to meet "Gloria" at her
print shop.  Defendant RICKY KESSLER stated that he would call

the undercover agent later in the week to set up the meeting with
"Gloria".

19.   On October 14, 2005, defendant RICKY KESSLER
called the undercover agent and informed him that he had paid
"Gloria" for the paper, and agreed to meet with the agent later
in the day.

20.   Later on October 14, 2005, the undercover agent
met with defendant RICKY KESSLER, and defendant RICKY KESSLER
stated that the agent owed him $1050 for the paper used to print
the counterfeit currency.  The agent gave defendant RICKY KESSLER
$1100 in genuine United States currency.  Defendant RICKY KESSLER
then stated that they could print additional counterfeit currency
on October 24, 2005, starting at approximately 2200 hours and
finishing at approximately 0400 or 0500 hours.  Defendant RICKY
KESSLER advised the agent that he would need to pay "Gloria" $500
and the employee printing the counterfeit currency $200.
Defendant RICKY KESSLER stated that the agent could pay him
whatever the agent felt was sufficient.

21.   At this meeting on October 14, 2005, defendant
RICKY KESSLER advised the undercover agent that the print shop
was named "Big Apple Printing," located in Queens, New York.

22.   Your affiant conducted an electronic search on
October 14, 2005 for "Big Apple Printing," and the results showed
only one location for Big Apple Printing, located at 2905 Review
Avenue, Long Island City, New York.  Additional electronic
searches on October 17, 2005 revealed that the president of Big

8

Apple Printing is listed as Gloria Huachamber, who filed for bankruptcy in July, 2005.

WHEREFORE, your deponent respectfully requests that warrants issue for the arrest of defendants JOHN VITO CONZA and RICKY KESSLER, so that they may be dealt with according to law.

JASON BRENNEMAN
Special Agent
United States Secret Service

before me this

SMG

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK